## S05A0706. CROUCH v. THE STATE.
(622 SE2d 818)

HINES, Justice.

Sam Crouch appeals his conviction for the felony murder of Annie Mae Dixon. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Dixon sold drinks of liquor and beer from her home. At 9:00 p.m. on July 11, 2000, Sam Crouch arrived and received a drink of liquor, which cost $1.50. He paid Dixon $1.00, told her he would owe fifty cents, and left. Crouch returned early in the morning on July 12, 2000, and asked for four quart-sized beers. Dixon refused to extend Crouch any more credit, and he attacked her as she sat in a recliner, hitting her multiple times in the head with an unknown blunt object. On August 15, 2000, she died as a result of the injuries.

At approximately 6:30 a.m. on July 12, 2000, Dixon's neighbor, Carroker, went to Dixon's house and noted that her back door was open; Dixon did not respond to his knocks. Carroker walked to the home of Dixon's uncle and the men returned to Dixon's home; she did not respond to them, and the men notified the sheriff's office of the situation. During this time frame, Carroker saw Crouch near Dixon's house carrying a quart bottle of beer; another witness also saw Crouch with such a bottle.

A sheriff's deputy arrived at Dixon's house, discovered her unconscious, and called an ambulance. Shortly after Dixon was taken away in the ambulance, Crouch returned to Dixon's home wearing a blood-spattered shirt. The deputy was told that Crouch had been lurking in the bushes behind Dixon's home. Tests revealed that the blood on his shirt was Dixon's.

Crouch gave three inconsistent statements to the police between July 12 and August 15, 2000. In the first, he stated that: he had been to Dixon's home around 2:30 a.m. on July 12; he was served a shot of liquor for $1.50; he paid $1.00 and was extended fifty cents credit; he then left, and during that night, he went to Smith's house several

---

[1] Dixon died on August 15, 2000, from injuries sustained on July 12, 2000. On March 12, 2001, a Talbot County grand jury indicted Crouch for malice murder, felony murder, and aggravated assault. Crouch was tried before a jury on October 1-4, 2001, and found not guilty of malice murder, and guilty of felony murder and aggravated assault. On October 10, 2001, Crouch was sentenced to life in prison on the felony murder conviction; the aggravated assault merged with the crime of felony murder. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Crouch moved for a new trial on October 26, 2001, and amended his motion on April 4, 2004. The motion was denied on November 15, 2004. Crouch filed his notice of appeal on November 30, 2004; the appeal was docketed in this Court on January 5, 2005, and submitted for decision on June 2, 2005.

times.[2] In the second statement, he said that: he went to Dixon's home at 9:00 p.m. on July 11; he was served a shot of liquor for $1.50, which price included fifty cents credit; he left, and returned later that night, requesting to buy four bottles of beer; Dixon put the bottles in a bag; he told her he had no money; she stated that she could not extend credit for the beers, but allowed him to have another drink of liquor,[3] after which he left; he went to Smith's house several times that night; and, at daybreak, he was walking in the vicinity of Dixon's home intending to return for more liquor, and was carrying a stick. In Crouch's third statement, he said that: he visited Carroker's house that same night; there was blood in Carroker's bathroom sink; Carroker wanted Crouch to join him on a trip to Talbotton; he and Carroker drove near Dixon's home; and, Carroker got out and threw something away. During this third interview, when confronted with the information that Dixon's blood was on his shirt, Crouch stated that: he entered Dixon's house and found her in a chair, bleeding from her head and face; he asked her what was wrong; she said she did not know what happened; and, she wiped her head and "was slinging blood."

1. Crouch contends that the State presented only circumstantial evidence that did not exclude all reasonable hypotheses except that of his guilt. See OCGA § 24-4-6.

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998). The evidence was sufficient to enable a rational trier of fact to find Crouch guilty beyond a reasonable doubt of felony murder. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Crouch also asserts that the State failed to prove felony murder as set forth in the indictment, as the indictment stated that the date of Dixon's death was August 8, 2000, when the only evidence was that she died on August 15, 2000. Crouch did not file a special demurrer to the indictment, see *Stinson v. State*, 279 Ga. 177, 179 (2) (611 SE2d

---

[2] Smith testified that she and Crouch smoked crack cocaine on three separate occasions that night.

[3] At the crime scene, law enforcement officers found a bag containing four quart bottles of beer.

52) (2005), and in any event, "the indictment did not make the date a material allegation, and the indictment sufficiently advised him of the charges against him so as to enable him to prepare a defense. [Cits.]" *Scott v. State*, 275 Ga. 305, 307 (2) (565 SE2d 810) (2002). Any variance between the date of death alleged and the date proved at trial did not prejudice Crouch's defense. *Blackwelder v. State*, 256 Ga. 283, 284 (4) (347 SE2d 600) (1986).

2. During jury voir dire, a potential juror indicated that he was acquainted with Crouch and was uncertain that he could be impartial. Further questioning of this potential juror was accomplished at the bench, to prevent other potential jurors from hearing his responses. Crouch complains that he was not present at the bench when this questioning took place. However, prior to the bench-side questioning, the court asked if defense counsel wished Crouch to be able to hear the questioning, and counsel responded negatively. Crouch did not object to the procedure himself, nor did he seek to have counsel object for him, and any objection to questioning the potential juror at the bench is waived. *Fuller v. State*, 277 Ga. 505, 506-507 (2) (591 SE2d 782) (2004).

3. After presenting the last defense witness, counsel for Crouch requested that the court advise Crouch concerning his right not to testify, and the implications of exercising that right. When the court was so doing, the following exchange took place:

COURT: . . . if you get on this witness stand, you could incriminate yourself. Incriminate means say something bad about yourself or that might tend to make the jury think that you could be or are guilty of this charge of murder that you're accused of. Do you understand that?
CROUCH: Yes.
COURT: Do you understand what incriminate means?
CROUCH: No, I don't, sir.
COURT: Sir?
CROUCH: I don't understand what it means, sir.
COURT: It means just what I said, if you were on trial for something else, let's say you were on trial for hitting a lady out here on the street and I just happened to be standing out there and I saw it or somebody else saw it and you got on this witness stand and testified on your own behalf and you denied hitting that lady on the street and then somebody else comes up and says, well, I saw him hit that lady. When you deny hitting that lady, that's incriminating yourself, you understand what I'm saying?
CROUCH: Yes, sir, I understand what you're saying.
COURT: Do you understand what incriminate means now?

CROUCH: Yes, sir.
COURT: All right. Are you sure?
CROUCH: Yes, sir. I understand.
COURT: I don't really know how to do it much better, [counsel].

Crouch contends that the court's instruction was erroneous and prevented him from testifying.[4]

To the extent that Crouch complains that the court gave a faulty definition of "incriminate," he has waived any error by his failure to object at the time, when the court could have corrected its definition. *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999). Further, we note that the court adequately defined "incriminate," and only when Crouch wished amplification did the court give a confused explanation of the dangers of testifying that included an inartful explanation of incrimination, linked to a caution about the potential for impeachment and consequent doubts being raised about the defendant's credibility. The prospect of impeachment and its raising doubts about the defendant's credibility are certainly proper considerations in the decision of whether to testify. See *United States v. Teague*, 953 F2d 1525, 1533, n. 9 (11th Cir. 1992).[5] Any mislabeling of the topic of impeachment as "incrimination" is of no effect in this case; the danger posed by testifying was properly identified to Crouch, regardless of what term was applied to the danger.[6] Additionally, the record shows that after the court's discussion of Crouch's right to testify or not, Crouch and his counsel engaged in a discussion off the record. At the hearing on the motion for new trial, counsel testified that during this discussion, he again cautioned Crouch concerning impeachment,

---

[4] At the hearing on the motion for new trial, Crouch did not testify concerning what his trial testimony might have been, only that he would have denied the crime.

[5] This Court has previously noted that there is no general requirement that the trial court interject itself into the defendant's decision-making process concerning whether to testify, which should be undertaken after consultation with counsel. See *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995).

[6] At the hearing on the motion for new trial, Crouch did not state that he chose not to testify at trial as a result of the trial court incorrectly defining "incriminate." Rather, Crouch's testimony was that he chose not to testify because he deduced from the court's explanation that "the judge . . . had already assumed that I committed the crime." Nothing in the record indicates that the trial court made such an assumption, or conveyed any such idea to the jury. In any event, it does not appear that any confusion of the concepts of incrimination and impeachment would impact Crouch's decision of whether to testify; the court put forth its definition only because Crouch stated that he did not know what the term "incrimination" meant. Thus, Crouch had no knowledge that the definition might be infirm, and such infirmity could not have affected his decision. The court's definition instructed Crouch on appropriate concepts, even if terms were used incorrectly.

especially in light of Crouch's three conflicting statements to investigating officers, and counsel also made it clear to Crouch that he had the right to testify, but that he decided not to.

It was not error to deny the motion for new trial on this ground.

4. Crouch contends that trial counsel's representation was ineffective because he failed to object to hearsay testimony from the victim's daughter. In order to prevail on this claim, Crouch must show both that counsel's performance was deficient and that the deficient performance was prejudicial to Crouch's defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of this test, Crouch must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of representation and under the particular circumstances of the case. Id. at 784. To meet the second prong, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " '[W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

During direct examination by the State, the witness, who visited with Dixon in the hospital and nursing home where Dixon was a patient between the time of the attack and her death, was asked: "Was she able to speak to you in any meaningful manner during that whole period of time before she died?" The witness responded: "On one particular visit she said Crouch." The State then asked: "Just once?" She replied: "Yes." Counsel for Crouch did not object.

Counsel testified at the hearing on the motion for new trial that: he did not anticipate that the witness would respond in this particular manner to a question that called for a "yes" or "no" answer; because of the nature of the question and answer, he did not believe a mistrial would be granted; he believed the most likely result of an objection would be an instruction from the court for the jury to disregard the testimony, thereby emphasizing its potentially prejudicial nature; he believed that he could actually use the testimony to Crouch's advantage by arguing that the use of the word "Crouch" by Dixon was a reflection of the fact that Crouch was the last person she saw before losing consciousness while he was helping her, consistent with Crouch's third statement; and, he argued that point to the jury. Crouch did not overcome the strong presumption that counsel's decision was in the exercise of reasonable professional judgment, and

it was not error for the trial court to deny the motion for new trial based on the ground of ineffective assistance of counsel.

5. Crouch has filed a pro se "Supplemental Brief of Appellant and Added Grounds for Relief" in this Court, attempting to raise additional enumerations of error. Even if timely, this brief would not be considered; Crouch does not have the right to be represented by counsel on appeal, and simultaneously to represent himself. See *Smith v. State*, 267 Ga. 372, 378 (12) (477 SE2d 827) (1996).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2005.

Sam Crouch, *pro se.*

*J. Gray Conger, District Attorney, Mark C. Post, Robert B. Bickerstaff II, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.