A05A2271. SULLIVAN v. THE STATE.
(627 SE2d 437)

BERNES, Judge.

A Chatham County jury convicted Patrick Daniel Sullivan of one count of aggravated assault and one count of giving a false name and address to a law enforcement officer. On appeal, Sullivan challenges his aggravated assault conviction, contending that the trial court erred in denying his motion for a directed verdict of acquittal and that the evidence was insufficient to support the verdict on that count. Finding no error, we affirm.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's

verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations omitted.) *Worthington v. State*, 257 Ga. App. 10, 10-11 (570 SE2d 85) (2002). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that at approximately 4:00 p.m. on September 6, 2001, Shirley Godfrey asked defendant Sullivan, her live-in boyfriend, to babysit her one-year-old son, D. G., while she went out to buy groceries. Sullivan agreed. When Godfrey left for the grocery store, D. G. was behaving normally. After Godfrey's departure, Sullivan was the only adult present in the home.

Approximately 20 minutes later, Sullivan placed a 911 phone call to the Chatham County Police Department, reporting that D. G. had fallen off the couch, was unconscious, and was not breathing. Law enforcement and emergency medical technicians from Chatham County responded to the call. When the law enforcement officer arrived at the scene, Sullivan identified himself by a false name, Henry Summers, and provided a false home address. Thereafter, the emergency medical technicians transported D. G. to St. Joseph's Hospital in Savannah.

While at the grocery store, Godfrey learned that D. G. had just been taken to the hospital. After arriving home, Godfrey found Sullivan in the living room in a frantic state. Sullivan said that D. G. fell off the couch and hit his head on the table. On their way to the hospital, Sullivan cried and exclaimed, "They're going to charge me with it. . . . They're going to charge me for hurting your son." He apologized to Godfrey several times, saying, "I'm sorry, I didn't mean to."

After D. G. arrived at St. Joseph's Hospital, the emergency room physicians observed that D. G. had clenched teeth and arms and appeared to be having a seizure. The pupil of D. G.'s left eye was very wide, fixed, and did not respond to light. His right pupil responded to light but would only move around in a "rotary gaze." D. G. was diagnosed as having a traumatic brain injury, and his trauma test scores revealed that he was in a comatose state.

D. G. was transported to Memorial Medical Center for specialized treatment in a pediatric intensive care unit. The police department and the Department of Family and Children Services were contacted and informed of D. G.'s injuries and the possibility of child abuse.

Sullivan subsequently was arrested. After he was *Mirandized,* Sullivan gave two voluntary tape recorded statements, both of which were later played at trial. Following the first statement, Sullivan cried, told the interviewing officer that he wanted to set the record straight, and admitted that D. G. had been crying and that he had shaken him. Sullivan then gave a second recorded statement. Sullivan admitted that after D. G. began crying, he picked him up, grabbed his shoulders, shook him without "do[ing] it hard at all," and said, "Shake the baby, shake the baby" as he "kinda rock[ed] [D. G.] back and forth." According to Sullivan, D. G.'s face then turned red. Sullivan told the officer, "I didn't mean to do it, man. I didn't mean to hurt that little baby. I didn't do it hard at all. I want to die, man. That little baby is hurt because of me."

At trial, the State presented expert medical testimony about "shaken baby syndrome." According to the State's medical experts, shaken baby syndrome occurs when young children are shaken with a force that tears veins connected to the brain as the head swings back and forth, causing the brain to slide across the rough areas of the temporal lobes on the side and base of the front skull. The State's medical experts testified that altered mental status, retinal hemorrhaging, and bleeding on the top of the brain are the traditional indicators of shaken baby syndrome.

Four of D. G.'s treating physicians, all of whom were admitted as medical experts at trial, testified that D. G. was comatose and in respiratory arrest, had multiple retinal hemorrhages in both eyes, suffered from bleeding on the top of his brain, and had intercranial swelling. The same expert witnesses opined that the unique constellation of brain and eye injuries exhibited by D. G., combined with the lack of any signs of external trauma commensurate with the severity of D. G.'s condition, were consistent with a diagnosis of shaken baby syndrome.

"A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). The indictment charged Sullivan with committing aggravated assault by shaking D. G. and thereby using his hands as objects which, when used offensively against a person, are likely to result in serious bodily injury. Based on the statements Sullivan made to the police, the evidence of D. G.'s severe injuries, and the expert medical testimony concerning those injuries and their consistency with shaken baby syndrome, we conclude that any rational trier of fact could have found Sullivan guilty beyond a reasonable doubt of aggravated assault as charged in the indictment. *Jackson v. Virginia,* 443 U. S. 307.

Sullivan asserts that the evidence presented by the State failed to exclude every alternative, reasonable hypothesis of his innocence on the aggravated assault charge. We disagree. The "reasonable hypothesis" rule relied upon by Sullivan, codified in OCGA § 24-4-6, applies only when the evidence against the accused was *entirely* circumstantial. *Miller v. State*, 265 Ga. App. 402, 403 (1) (593 SE2d 943) (2004); *Lane v. State*, 255 Ga. App. 274, 276 (564 SE2d 857) (2002). Here, there was direct testimony in the form of Sullivan's own admissions to the police that he had shaken D. G. Hence, the "reasonable hypothesis" rule is not applicable under the circumstances of this case.

It is true that Sullivan testified at trial that D. G. had fallen off the couch and hit his head on a nearby table, and that the impact of the fall was what caused D. G.'s injuries. Sullivan also attempted to show that D. G. had prenatal problems and had fallen off the couch on a previous occasion, injuring himself in the process. However, each of the State's medical experts testified that D. G.'s severe injuries were inconsistent with Sullivan's explanation for the injuries. Indeed, according to one medical expert, the severity of D. G.'s eye injuries indicated that they were caused by a degree of force commensurate with an unrestrained child hitting the pavement during a high speed automobile collision. Furthermore, several of the medical experts opined that D. G.'s injuries were unrelated to his prior medical history. As the sole judge of credibility charged with resolving all conflicts in the evidence, the jury was entitled to reject Sullivan's version of events and to credit the testimony of the State's multiple medical experts. "It is the jury's prerogative to choose what evidence to believe and what to reject." *Trammell v. State*, 253 Ga. App. 725, 726 (1) (560 SE2d 312) (2002).

Finally, we reject Sullivan's argument that his acquittal on the charges of cruelty to children and aggravated battery shows that the evidence was insufficient to find him guilty of aggravated assault.

> Georgia does not recognize an inconsistent verdict rule, which would permit a defendant to challenge the factual findings underlying a guilty verdict on one count as inconsistent with the findings underlying a not guilty verdict on a different count. A conviction on one count and acquittal on another related count may reflect a compromise or lenity by the jury rather than inconsistent factual conclusions, and Georgia courts generally will not look behind the jury's decision to convict on certain counts and acquit on other counts.

(Footnotes omitted.) *Hines v. State*, 276 Ga. 491, 492 (2) (578 SE2d 868) (2003).

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 23, 2006.

*Daly, Bowen & Calhoun, Brian L. Daly, Darden, Burns & Harris, Richard M. Darden*, for appellant.

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney*, for appellee.