## A05A2132. JOHNSON v. THE STATE.
### (628 SE2d 183)

RUFFIN, Chief Judge.

Following the death of an infant in his care, Garrett Johnson was charged with murder, felony murder, and two counts of cruelty to children. A jury found Johnson guilty of one count of cruelty to children for shaking the child, and the trial court sentenced him to twenty years. On appeal, Johnson challenges the sufficiency of the evidence. He also claims the trial court erred in failing to charge the jury on involuntary manslaughter. As Johnson's claims of error lack merit, we affirm.

1. "On appeal from a criminal conviction, the evidence is viewed in [a] light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence."[1] This Court neither weighs the evidence nor determines the credibility of witnesses, but merely ascertains whether the evidence was sufficient to prove guilt beyond a reasonable doubt.[2]

Viewed in this manner, the record reveals that Eula Battle was in a relationship with Johnson. In June 2000, Battle and her two children, four-year-old Brandon and fourteen-month-old Adorian, moved in with Johnson. Battle and Johnson began arguing over her treatment of the children. According to Battle, Johnson complained that she was spoiling Adorian and told her to "quit holding her as much as [she] was holding her."

In July 2000, Battle left her children in Johnson's care while she attended a child support hearing in another town. Johnson called Battle on a cell phone and told her Adorian had fallen asleep with her face on her brother's toy cars and had bruised her face and cut her

---

[1] *Hood v. State*, 273 Ga. App. 430, 431 (615 SE2d 244) (2005).
[2] See id.

tongue. After this incident, Adorian began avoiding Johnson and began crying more often.

On July 23, 2000, Battle and Johnson were at home with Battle's two children and Johnson's two young children. Although Johnson's grandmother also was present, Battle says she stayed mostly in her own room. At approximately 2:00 p.m., Johnson asked Battle to go to a McDonald's restaurant. Before she left, Battle put Adorian down for a nap. According to Battle, Adorian appeared uninjured and was playing normally that morning.

Battle testified that she was gone approximately 30 minutes. When she returned, the house was surrounded by emergency equipment, including an ambulance. Battle asked Johnson what had happened, and he said Adorian started crying and he went "to see what was wrong with her, and he picked her up[,] and . . . he gently shook[,] her and her eyes rolled back in her head and she went limp, so he dialed 911."

Richard Weires, the paramedic who responded to the scene, testified that Adorian was not breathing when he arrived at the house. Weires spoke with Johnson, who said that he heard Adorian stop crying, went to check on the child, and discovered she was not breathing. Weires testified that Johnson's demeanor "was very calm, cool, collected, very unaffected by what was [happening]."

Adorian was taken to the Medical Center of Central Georgia where she was seen by Dr. Robert Williams. Williams ordered a CAT scan of the child's brain, which showed bleeding and significant swelling. During the examination, Williams also discovered "questionable bruises on the child's back" and retinal hemorrhaging. Chest x-rays also revealed several rib fractures that were seven to ten days old. Adorian ultimately died as a result of her injuries, which her doctors attributed to shaken baby syndrome. A subsequent autopsy confirmed that Adorian's death was the result of "blunt-force trauma to the head due to a shaking mechanism or what is known as Shaken Baby Syndrome."

Based upon the evidence presented, the jury found Johnson guilty of cruelty to children in the first degree for "unlawfully and maliciously caus[ing] Adorian . . . cruel and excessive physical pain by shaking said [child] violently, causing bruising to said child and injury to the brain of said child." On appeal, Johnson contends that the State failed to prove the element of malice. According to Johnson, the evidence showed only "a man who, left alone to care for a young child who suddenly exhibited symptoms indicating a failure to breath[e], shook said child to help her with the breathing process." We disagree.

Although Johnson evidently told Battle that he "gently" shook Adorian, the jury was not required to believe his characterization of

the event.[3] Rather, the jury was authorized to weigh this assertion against the other evidence, including the testimony of Adorian's doctors, who said that the child's injuries were the result of "[m]ajor violent force." Indeed, given the nature and extent of Adorian's injuries, the jury was well within its authority to conclude that they were the result of a malicious act. Accordingly, the evidence was sufficient to support the jury's verdict.[4]

2. Johnson also asserts that the trial court erred in failing to give his requested charge on involuntary manslaughter. Again, we disagree.

In addition to facing cruelty to children charges, Johnson also faced a murder charge. Thus, he requested the following jury charges:

### Request to Charge No. 8

I charge you members of the jury that murder and manslaughter are different grades of offense [sic] of unlawful homicide. . . .

### Request to Charge No. 9

I charge you members of the jury that if you find the death of the alleged victim in this case is the result of a simple assault, and the death of the alleged victim was unintentionally resulting [sic] from such unlawful simple assault, this would amount to involuntary manslaughter and not murder, and if you find the same beyond a reasonable doubt, you would be authorized to convict the accused of the offense of involuntary manslaughter.

### Request to Charge No. 10

I charge you that a person who commits the offense of . . . involuntary manslaughter when he, in the commission of a lawful act in an unlawful manner, causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm.

---

[3] See *Miller v. State*, 277 Ga. 707, 709 (1) (593 SE2d 659) (2004) (jury not required to believe defendant's self-serving statement that she did not intend to harm the child).

[4] See id.; *Hood*, supra at 432-433 (1); *Carter v. State*, 276 Ga. 322, 323 (577 SE2d 787) (2003).

Request to Charge No. 11

I charge you members of the jury that involuntary manslaughter is a lesser included offense in this case.

It is abundantly clear from the above-quoted language that Johnson submitted his request for the involuntary manslaughter charge as a lesser included offense of the murder charge. Indeed, a requested charge on a lesser included offense should be given where the case contains some evidence that the defendant committed the lesser offense.[5] Here, however, the jury acquitted Johnson of murder and was unable to reach a verdict on the felony murder charge. Under these circumstances, we fail to see how Johnson was harmed by the trial court's failure to instruct the jury on involuntary manslaughter as a lesser included offense.[6]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 7, 2006.

*Renate D. Moody*, for appellant.
*Richard G. Milam, District Attorney, Mark S. Daniel, Assistant District Attorney*, for appellee.

---

[5] See *Loren v. State*, 268 Ga. 792, 795 (3) (493 SE2d 175) (1997).

[6] See *Childers v. State*, 228 Ga. App. 214, 215 (1) (491 SE2d 456) (1997).