A06A1575. MAHAN v. THE STATE.
(638 SE2d 366)

RUFFIN, Chief Judge.

A jury found Isaiah Mahan guilty of aggravated assault against Trevioun Holmes, his girlfriend's infant son.[1] Mahan appeals, challenging the sufficiency of the evidence and arguing that he received ineffective assistance of counsel. Finding no error, we affirm.

"On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence."[2] We do not weigh the evidence or evaluate the credibility of witnesses, but rather "determine whether the evidence is sufficient to prove guilt beyond a reasonable doubt."[3] Viewed in this light, the evidence shows that on December 10, 2002, Mahan and Trevioun's mother, Meoshia Holmes, spent the day with

---

[1] The jury acquitted Mahan of cruelty to children.

[2] (Punctuation omitted.) *Nichols v. State*, 278 Ga. App. 46 (628 SE2d 131) (2006).

[3] Id.

Trevioun, who was eight months old. The child had been sleeping more than usual because he had a cold and an ear infection but was otherwise behaving normally. At approximately 5:30 p.m., Meoshia and Mahan's sister, Allicia, left their children in Mahan's care while they went on an errand. Allicia's two children were four and five years old.

When the two women returned at approximately 8:30 p.m., Trevioun was asleep. Mahan and Allicia's two children were the only other people present. Allicia noticed that Trevioun was making "funny noises" and clenching his fists. Meoshia attempted to wake the child, but he was lethargic, his eyes would not stay open and he could not keep his head raised. Emergency personnel called to the scene took Trevioun to the hospital.

Trevioun was admitted to the hospital with seizures. A CAT scan showed severe injury to his brain, including bleeding in the right frontal region and swelling. The emergency room physician who treated him described Trevioun's injuries as "close to being life threatening, if not life threatening." A forensic pediatrician, Dr. Steven Dunton, who saw Trevioun the next day, found him to be minimally responsive with "tremendous" retinal hemorrhaging in both eyes and bleeding on his brain that suggested "significant brain damage." Dr. Dunton testified that, due to the severity of Trevioun's injuries, he believed the onset of symptoms such as the seizure activity would have occurred very rapidly, "easily within hours . . . [and] [i]t might have been much faster than that." He also testified that "[i]t would be very unlikely" for a four- or five-year-old child to be strong enough to cause the type of injuries Trevioun received. It was his medical opinion that Trevioun's symptoms were caused by violent shaking, or "shaken baby syndrome," on the day he was admitted to the hospital.[4]

Mahan denied shaking or otherwise injuring Trevioun. He testified that when Meoshia left Trevioun in his care, the child was crawling, eating, playing, and otherwise acting normally. Mahan stated that he went outside to smoke a cigarette and, when he returned, found Trevioun behind the door crying. Mahan said that when he picked up Trevioun, the child felt limp "as if he was tired," so Mahan put him to bed.

1. Mahan contends that the evidence at trial was insufficient to find him guilty beyond a reasonable doubt because the evidence did

---

[4] Dr. Dunton also testified that the CAT scan showed evidence of a separate brain injury, which appeared to have occurred on an earlier date.

not exclude the possibility that either Meoshia or Allicia caused Trevioun's injuries. A jury may convict a defendant based on circumstantial evidence

> only when the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis but that of the guilt of the accused. When it meets this test, circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the jury. Further, circumstantial evidence must only exclude every other reasonable hypothesis save the defendant's guilt; it need not exclude every possible inference or hypothesis.[5]

The jury decides whether or not a hypothesis is reasonable.[6]

Here, it is undisputed that Trevioun was behaving normally when Meoshia and Allicia left him with Mahan. Mahan was the only adult alone in the home with Trevioun that day, and he was with Trevioun for several hours immediately before he began to show signs of shaken baby syndrome. Medical testimony established that, because of the severity of his injuries, Trevioun would have shown signs such as seizure activity soon after he was injured, and that it was "very unlikely" that one of the other young children present could have inflicted the injuries. And the jury was not required to believe Mahan's version of events, but was authorized to weigh it against the medical testimony and the testimony of both Meoshia and Allicia.[7] Under these circumstances, the jury could conclude that the hypothesis that Meoshia or Allicia injured Trevioun was not reasonable.[8] Thus, the evidence was sufficient to support the jury's verdict.[9]

2. Mahan contends he received ineffective assistance because trial counsel failed to investigate the medical evidence and did not object to the admission of evidence that Mahan had prior difficulties with Trevioun. In order to demonstrate ineffective assistance of counsel, Mahan must show "(1) that counsel's performance was deficient, and (2) that the deficient performance so prejudiced the defense that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[10] There is

---

[5] (Citation and punctuation omitted.) *Lindo v. State*, 278 Ga. App. 228, 234 (3) (628 SE2d 665) (2006).

[6] See id.

[7] See *Johnson v. State*, 278 Ga. App. 66, 67-68 (1) (628 SE2d 183) (2006).

[8] See *Hood v. State*, 273 Ga. App. 430, 432-433 (1) (615 SE2d 244) (2005).

[9] See *Johnson*, supra at 68.

[10] *Tarver v. State*, 280 Ga. App. 89, 92-93 (3) (633 SE2d 415) (2006).

a "strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment."[11] We evaluate the trial court's factual findings and credibility judgments under a clearly erroneous standard.[12]

(a) Mahan first argues that trial counsel did not adequately investigate the medical evidence or thoroughly cross-examine Dr. Dunton, resulting in the presentation of "an impossible defense" to the jury. As Mahan admits in his appellate brief, the evidence was that Trevioun had been violently shaken; "[t]he only issue in the case [was] who did it." Mahan contends that trial counsel was ineffective in arguing that Trevioun's injuries were caused either by the four- and five-year-old children present on December 10 or by older children who had been with Trevioun two days earlier, because these arguments were unsupported by the evidence.

Trial counsel testified at the hearing on Mahan's motion for new trial that his defense strategy, after consultation with Mahan, was to argue that Mahan did not injure Trevioun and did not know how the injuries occurred. While trial counsel did question Dr. Dunton briefly about the possibility of other children inflicting Trevioun's injuries, we see no other evidence that he "blame[d] a defenseless child for the injuries," as suggested by Mahan. Trial counsel's decisions as to tactics and strategy, including the scope of cross-examination, generally do not amount to ineffective assistance of counsel.[13] "The fact that defendant and his present counsel disagree with the decision made by trial counsel does not require a finding that defendant's original representation was inadequate."[14] Based on the record before us, the trial court did not err in concluding that trial counsel rendered effective assistance in questioning Dr. Dunton about the possibility of others inflicting Trevioun's injuries.[15]

(b) In a related argument, Mahan contends that trial counsel was ineffective because he failed to adequately cross-examine Dr. Dunton about the time frame during which Trevioun's injuries occurred. At the hearing on the motion for a new trial, Dr. Dunton testified that he could not pinpoint the exact time at which Trevioun was injured. He stated that Trevioun's symptoms could have become apparent at any time from immediately upon his injury to more than three hours later, but testified that he "[did not] believe that the case can be confined to

---

[11] (Punctuation omitted.) *Crouch v. State*, 279 Ga. 879, 883 (4) (622 SE2d 818) (2005).

[12] See id.

[13] See *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003).

[14] (Punctuation omitted.) *Scott v. State*, 281 Ga. App. 106, 112-113 (4) (a) (635 SE2d 582) (2006).

[15] See *Abernathy v. State*, 278 Ga. App. 574, 586 (3) (b) (i) (630 SE2d 421) (2006).

a two-and-a-half or three-hour window." Mahan asserts that trial counsel should have elicited this testimony at trial because it raises reasonable doubt as to whether Trevioun was injured during the time he was alone with Mahan.

Dr. Dunton's testimony on motion for new trial, however, is consistent with his trial testimony that "[t]he more severe the injuries, the more severe the child's clinical presentation, generally the faster the symptoms come on. . . . Within hours, sometimes within minutes. Sometimes it's instantaneous." His opinion at trial was that "the onset of [Trevioun's] symptoms [was] very rapid. I wrote in my consultation here within hours, and I think easily within hours. It might have been much faster than that." On cross-examination, trial counsel asked Dr. Dunton about the possibility that Trevioun could have been injured as much as two days earlier, to which Dr. Dunton replied "I said it may have occurred then, but . . . more typically, it would be more rapid than this, and it may have occurred twice." The jury heard testimony that Trevioun could have been injured as much as two days or as little as a few minutes before the onset of his symptoms. While trial counsel may not have elicited at trial the precise testimony that Dr. Dunton gave at the motion for new trial hearing, the substance of the testimony upon which Mahan focuses was before the jury. Pretermitting whether trial counsel's cross-examination of Dr. Dunton was deficient,[16] Mahan has not established that he was harmed by trial counsel's performance, and the trial court properly denied his claim of ineffective assistance of counsel on this basis.[17]

(c) At trial, Meoshia and her aunt testified about two earlier incidents. In one, Mahan agreed to babysit a then four-month-old Trevioun, but then went to a party, leaving Trevioun alone. In the other, which occurred less than a month before Trevioun was injured, Mahan cut up Trevioun's shoes with a knife after arguing with Meoshia. Mahan contends that neither of these incidents should have been admitted as a prior difficulty, and that his attorney was ineffective in failing to object to their admission.

> Evidence of a defendant's prior act toward the same victim, whether an assault, a quarrel, or a threat, is admissible as evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and

---

[16] See *Harris v. State*, 280 Ga. 372, 374-375 (3) (627 SE2d 562) (2006) (trial counsel's performance may fall within range of acceptable representation even if, in hindsight, different approach to cross-examination might have been utilized).

[17] See *Blackwell v. State*, 270 Ga. 509, 511 (4) (512 SE2d 233) (1999).

bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.[18]

The two incidents at issue were admissible to show Mahan's motive, intent, and bent of mind in shaking Trevioun.[19] Because trial counsel is not required to make a futile objection, Mahan has not established ineffective assistance of counsel.[20]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 1, 2006.

*Zell & Zell, Rodney S. Zell,* for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Daniel J. Quinn, Assistant District Attorneys*, for appellee.

---

[18] *Clements v. State*, 279 Ga. App. 773, 776 (5) (632 SE2d 702) (2006).
[19] See *Hill v. State*, 243 Ga. App. 124, 125-126 (2) (532 SE2d 491) (2000). Here, the jury was given a proper limiting instruction on the use of prior difficulty evidence. See *Hall v. State*, 255 Ga. App. 631, 634-635 (4) (a) (566 SE2d 374) (2002).
[20] See *Fields v. State*, 281 Ga. App. 733, 738 (2) (a) (637 SE2d 136) (2006).