### A10A0045. LEWIS v. THE STATE.
(698 SE2d 365)

BERNES, Judge.

Wade Lewis, Jr., was convicted of involuntary manslaughter and cruelty to children in the first degree. Lewis's motion for a new trial was denied, from which he appeals. Lewis contends that the evidence was insufficient to sustain his convictions and that the trial court erred in denying his motion for continuance, in denying his motion to strike a prospective juror for cause, and in overruling his hearsay objection to certain testimony from the medical examiner. Lewis further contends that his trial counsel provided ineffective assistance by failing to timely file a special demurrer to the cruelty to children charge in the indictment. For the reasons that follow, we affirm.

1. On appeal from a criminal conviction, we view the evidence in a light most favorable to the jury's verdict to determine whether the evidence was sufficient to prove guilt beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Johnson v. State*, 278 Ga. App. 66 (1) (628 SE2d 183) (2006).

So viewed, the evidence at trial showed that Lewis and his wife were the parents of three children: a two-year-old son, the seventeen-month-old victim, and a three-month-old daughter. Lewis would often stay at home to care for the children while his wife was at work.

On the afternoon of June 7, 2005, Lewis called 911, reporting that his 17-month-old son, I. L., was unconscious. Emergency responders were dispatched to Lewis's residence. The responders noted that I. L. had a strong pulse, but that he was not breathing and his pupils were dilated and unresponsive to light. Lewis informed the responders that I. L. had fallen off his play set's slide in the backyard earlier that morning and could not be awakened from his nap later that afternoon. He further stated that at the time of the alleged fall, I. L. had been in the care of his wife and that he had not been present. When the emergency responders arrived, however, Lewis was the only adult at the residence and his wife was not there.

I. L. was transported to the hospital, where he later died as a result of his injuries. The police were called to conduct an investiga-

tion of the circumstances that led to I. L.'s death. Investigators went to the residence and took photographs and measurements of the slide from which I. L. had allegedly fallen. The investigators determined that the slide was approximately three feet in height. Lewis's wife stated that I. L. was not physically capable of climbing the slide by himself.

Lewis agreed to participate in a police interview. Lewis gave the officers a written statement and a subsequent oral statement that was recorded by audiotape. In his statements, Lewis claimed that I. L. had fallen while he was in the care of his wife and that Lewis discovered that something was wrong with I. L. when he could not wake him up from his nap later that afternoon.

Upon further questioning, however, Lewis eventually recanted his prior statements. In his audiotaped statement, Lewis claimed that on the morning of the incident, he had taken his wife to work and had been alone with I. L. and his daughter at the residence. I. L. was behaving normally at that time and he had taken the children to their play set in the backyard. He briefly left the children unattended when he went inside the residence to answer the telephone. When he returned, I. L. was crying. Lewis claimed that he was unsure of whether I. L. had hit his head, "but [he] consoled [I. L.] . . . and shook him until he stopped crying." Lewis further claimed that I. L. went to sleep and when he tried to awaken I. L. later that afternoon, I. L. was unresponsive and was having trouble breathing. Lewis stated that he shook I. L. again to try to wake him and then he called 911. Lewis admitted that he had lied about I. L. being in his wife's custody at the time of the incident because he had outstanding criminal warrants for his arrest and wanted to distance himself from the situation.

An autopsy examination revealed that the cause of I. L.'s death was "cranial cerebral trauma." The medical examiner testified that during his examination, he had observed retinal hemorrhages in both of I. L.'s eyes, knuckle-shaped imprints on the front of his head, bleeding between the inside of his skull and the outside of his brain, swelling of his brain, multiple impacts to his head, and symmetrical bruising to his body. According to the medical examiner, all of I. L.'s injuries were consistent with the signs commonly associated with "shaken baby syndrome," also referred to as "shaken impact [syndrome]," a condition occurring when a child's brain impacts against the inside of the skull due to a violent shaking of the child's head. The medical examiner opined that I. L.'s injuries were nonaccidental, were sustained when I. L. was forcefully shaken by another person, and were inconsistent with Lewis's claim that the child had been injured during a single fall from the play set's slide.

Following the investigation, Lewis was arrested and criminally

charged with I. L.'s death. At trial, Lewis presented the testimony of several character witnesses and a medical expert. Lewis's medical expert opined that there were innocent explanations for I. L.'s injuries, and that the evidence did not rule out the possibility of a short fall or of pressure that may have been applied to his body during his medical treatment at the hospital.

Lewis also testified in his own defense at trial. Lewis recounted the version of events that he gave to the officers in the audiotaped interview, and admitted that he had initially lied about not being the child's primary caretaker at the time of the incident. Lewis nevertheless claimed that he had done nothing to physically harm I. L.

Based upon the foregoing evidence, the jury found Lewis guilty of involuntary manslaughter and cruelty to children in the first degree. The evidence was sufficient to authorize the jury's verdicts. See OCGA §§ 16-5-3 (a),[1] 16-5-70 (b);[2] *Waits v. State*, 282 Ga. 1, 2 (1) (644 SE2d 127) (2007); *Johnson*, 278 Ga. App. at 66-68 (1); *Sanders v. State*, 245 Ga. App. 561, 562-563 (1) (538 SE2d 470) (2000).

Lewis contends that the state presented only circumstantial evidence and that this evidence failed to exclude all reasonable hypotheses except that of his guilt. See OCGA § 24-4-6. Lewis's contention is without merit. The "reasonable hypothesis" rule applies only when the evidence against the accused was *entirely* circumstantial. See *Sullivan v. State*, 277 Ga. App. 738, 741 (627 SE2d 437) (2006). Here, there was direct evidence in the form of Lewis's own admissions to the police that he had shaken I. L. Consequently, the "reasonable hypothesis" rule does not apply in this case. See id.

Lewis further argues that he is entitled to a new trial since the verdict was decidedly and strongly against the weight of the evidence. See OCGA § 5-5-21.[3] "Of course, such an argument may only be made to a trial court in a motion for new trial, not to an appellate court on appeal. We do not have the discretion to grant a new trial on these grounds." (Citations, punctuation and footnotes omitted.) *Hughes v. State*, 297 Ga. App. 581, 582 (1) (677 SE2d 674) (2009). See also *Drake v. State*, 241 Ga. 583, 585 (1) (247 SE2d 57) (1978).

---

[1] "A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony." OCGA § 16-5-3 (a).

[2] "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (b).

[3] "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." OCGA § 5-5-21.

2. Lewis also contends that the trial court erred in denying his motion for a continuance after the state announced its intent to prove that the child cruelty offense was committed on a different date than that alleged in the indictment.

The indictment charged Lewis with murder, felony murder, and cruelty to children in the first degree.[4] It alleged that Lewis had committed the murder and felony murder offenses by shaking I. L. and causing I. L.'s head to strike a surface on June 7, 2005, which resulted in I. L.'s death on or about June 8, 2005. It further alleged that Lewis had committed the child cruelty offense on July 7, 2005 by striking I. L. in the front of the head. Lewis filed a notice of his intent to present an alibi defense as to the child cruelty charge, asserting that he was incarcerated on the date alleged in the indictment.

Prior to trial, the state announced that it intended to prove that the child cruelty offense was committed on June 7, 2005, the same date alleged in the other counts of the indictment. The state asserted that the July date set forth in the child cruelty charge was obviously an error since I. L. had been deceased for nearly one month by that time. Lewis moved for a continuance, claiming that he was surprised by the difference in the dates and that he was being deprived of his alibi defense. The trial court denied Lewis's motion. We discern no error.

> It is well established that where the exact date is not stated as a material allegation of the time of commission of the offense in the indictment, it may be proved as of any time within the statute of limitations. An exception exists where the evidence of the state proving that the offense was committed at a time substantially different from that alleged in the indictment surprises and prejudices the defense in that it deprives the defendant of a defense of alibi or otherwise denies him his right to a fair trial.

(Citations and punctuation omitted.) *Turner v. State*, 202 Ga. App. 799, 800 (1) (415 SE2d 524) (1992).

The trial court was authorized to conclude that there was no basis for Lewis's claim of surprise in this case. The other counts of the indictment charging Lewis with murder and felony murder alleged that I. L. had died on or about June 8, 2007. The prosecutor advised the trial court that during the exchange of discovery, Lewis was given all of the state's evidence, including I. L.'s death certifi-

---

[4] The jury exonerated Lewis of the murder charge, but found Lewis guilty of involuntary manslaughter as a lesser included offense to the felony murder charge. The jury also found Lewis guilty of the cruelty to children charge.

cate, which established that the charged offense took place on June 7, 2005 and that I. L. had died on the following day, June 8, 2005. Lewis did not disclaim having knowledge that I. L. had been deceased for nearly one month prior to the July date alleged in the indictment, and he acknowledged that it was impossible for the crime to have been committed on the date alleged in the indictment. Under these circumstances, the error in the date alleged in the indictment was obvious and Lewis's claim of surprise was unwarranted. Consequently, the trial court did not abuse its discretion in denying Lewis's motion for a continuance. See *Turner*, 202 Ga. App. at 800-801 (1). Compare *Raposa v. State*, 207 Ga. App. 106, 106-107 (427 SE2d 79) (1993) (concluding that the defendant was entitled to a continuance based upon his alibi defense since the state failed to provide defendant with notice of the conflicting date, even though the defendant had filed a pretrial discovery motion seeking records reflecting the date of the offense).

3. Next, Lewis claims that the trial court erred in denying his motion to strike a prospective juror for cause. Again, no error has been shown.

During preliminary voir dire, prospective juror no. 2 stated that he was not "perfectly impartial." The juror explained that he was confused about the meaning of that phrase, and that he believed that it meant having no knowledge regarding the case. The juror claimed that he had seen a media report about the case, but could not recall any of the details that had been reported. During further questioning, the juror stated that he had no problem with the concept that Lewis was innocent until proven guilty beyond a reasonable doubt; he did not favor either side; and he would listen to the evidence with an open mind and apply the law given by the court in reaching a decision if selected to serve on the jury. He also responded that he was "completely impartial to [Lewis] as an individual, because [he did not] know [Lewis] or anything about him as a person." The juror stated that he had not formed an opinion as to whether Lewis was guilty, and he could decide the case solely based upon the evidence presented at trial.

Following voir dire, Lewis moved to strike the juror from the panel for cause. The trial court denied Lewis's motion. Thereafter, Lewis used a peremptory strike to remove the juror from the panel.[5]

Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed

---

[5] Lewis's use of his peremptory strikes does not render the alleged error harmless. "The defendant's use of his peremptory strikes . . . no longer play[s] a role in our evaluation of the harm caused by the refusal to strike an unqualified juror." *Harris v. State*, 255 Ga. 464, 465 (2) (339 SE2d 712) (1986).

and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. The decision to strike a juror for cause lies within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion.

(Citation omitted.) *Moreland v. State*, 263 Ga. App. 585, 586 (1) (588 SE2d 785) (2003). "A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. . . . Excusal is not required when a potential juror states that he or she will try to decide the case based upon the court's instructions and the evidence." (Citations and punctuation omitted.) *Roberts v. State*, 276 Ga. 258, 259 (2) (577 SE2d 580) (2003). See also *Huskins v. State*, 294 Ga. App. 653, 654 (1) (669 SE2d 680) (2008). "Nor does a juror's pretrial exposure to media coverage of a crime mandate that the juror be excused for cause where, as here, the juror expresses the ability to set aside anything they had heard or seen and base their personal verdicts only on the evidence presented in the courtroom." (Citation and punctuation omitted.) *Ramirez v. State*, 279 Ga. 569, 573 (3) (619 SE2d 668) (2005). See also *Brown v. State*, 268 Ga. 354, 356-357 (3) (490 SE2d 75) (1997); *Reddick v. State*, 264 Ga. App. 487, 496-497 (5) (b) (591 SE2d 392) (2003). Here, there was no evidence that the juror had formed an opinion so fixed and definite that he would be rendered unable to decide the case solely based upon the evidence and the charge of the trial court. Consequently, the trial court did not abuse its discretion in refusing to strike the juror for cause. See *Ramirez*, 279 Ga. at 573 (3); *Brown*, 268 Ga. at 356-357 (3); *Reddick*, 264 Ga. App. at 496-497 (5) (b).

4. Lewis next argues that the trial court erred in overruling his hearsay objection to certain testimony from the medical examiner. The medical examiner testified that the injuries inflicted upon I. L. had prevented blood from flowing to I. L.'s brain. The medical examiner testified that his findings as to the lack of blood flow were based upon his personal observations as well as a cerebral blood flow study contained in the hospital's medical records. Lewis objected to the medical examiner's testimony, contending that the reference to the hospital's medical records amounted to inadmissible hearsay.

[T]he rule in this state is that . . . [a]n expert may base his opinion on hearsay and may be allowed to testify as to the basis for his findings. When an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which

should be assigned the opinion. The evidence should go to the jury for whatever it's worth.

(Citations and punctuation omitted.) *Roebuck v. State*, 277 Ga. 200, 202 (1) (586 SE2d 651) (2003). See also *Velazquez v. State*, 282 Ga. 871, 875 (3) (655 SE2d 806) (2008); *Lawrence v. State*, 201 Ga. App. 7, 7-8 (1) (410 SE2d 136) (1991). Also see *Leonard v. State*, 269 Ga. 867, 870-871 (3) (506 SE2d 853) (1998) (explaining that "[i]n cases in which an expert's opinion is based *in part* on hearsay, the testimony may be admitted and the expert's lack of personal knowledge presents a jury question as to the weight to be accorded the expert's opinion. . . . But this does not provide a mechanism by which hearsay that forms the *sole* basis of an expert's opinion can be placed before the jury in violation of the basic rules of evidence.") (citations and punctuation omitted; emphasis in original and supplied).

Because the medical examiner's testimony was based in part upon his personal observations during the autopsy and was not solely dependent upon the hospital's medical records, Lewis's hearsay objection was properly overruled. See *Velazquez*, 282 Ga. at 875 (3); *Roebuck*, 277 Ga. at 202 (1).

5. Lastly, Lewis contends that his trial counsel provided ineffective assistance by failing to timely file a demurrer to challenge the erroneous date alleged in the child cruelty charge of the indictment. As set forth in Division 2 above, the indictment contained an obvious error in the alleged date of the child cruelty charge. Trial counsel did not file a demurrer to the indictment.

"To succeed on his ineffective assistance claim, [Lewis] was required to show that his trial counsel's failure to specially demur materially impacted his ability to present a defense, thereby creating a reasonable probability that counsel's deficiency changed the outcome of the case." (Citation and punctuation omitted.) *Washington v. State*, 298 Ga. App. 105, 106 (679 SE2d 111) (2009). Lewis failed to make the requisite showing in this case. The evidence did not establish that Lewis was unable to present a defense to the child cruelty charge as a result of the obvious date error. "Further, as we have previously noted, because a defendant can be re-indicted after the grant of a special demurrer, a failure to file such a demurrer generally will not support a finding of ineffective assistance of counsel." Id. See also *Cotton v. State*, 279 Ga. 358, 361 (5) (613 SE2d 628) (2005). At the motion for new trial hearing, trial counsel testified that even if a special demurrer had been successfully pursued, the state would have been able to correct the date error and re-indict Lewis for the offense. The indictment as crafted contained the essential elements of the child cruelty offense. Furthermore, as discussed in Division 2, the date error in the indictment was obvious

and formed no basis for a claim of surprise or inability to present a defense. Under these circumstances, Lewis's claim affords no basis for reversal. See *Washington*, 298 Ga. App. at 106.

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED JULY 7, 2010 —

G. *Richard Stepp*, for appellant.

*Daniel J. Porter, District Attorney, Richard A. Vandever, Assistant District Attorney*, for appellee.