**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 13, 2013**

# In the Court of Appeals of Georgia

A13A0801. JORDAN v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Michael Quintrell Jordan was convicted of two counts of aggravated assault in connection with a shooting at a nightclub. He argues that he was entitled to a directed verdict on one of the counts, that the evidence was insufficient to support his conviction on the other count, and that the trial court erred in charging the jury. Because the evidence authorized Jordan's conviction on both counts and the challenged charge was proper, we affirm.

1. *Facts.*

In the early morning on October 11, 2009, Jordan got into an argument at a nightclub, and a bouncer used a "chokehold" to forcibly eject him from the club. The two exchanged words and Jordan told the bouncer, "wait 'til I go to the car, I'll be

back." The bouncer construed this as a threat that Jordan "was going to go get a gun." Another club employee called the police, and the bouncer remained outside the club. A few minutes later, several shots were fired in the bouncer's direction. One of those shots hit a bystander, who was standing outside near the bouncer.

2. *Aggravated assault against the bouncer.*

The indictment charged Jordan with aggravated assault against the bouncer by shooting at the bouncer with a gun, a deadly weapon. See *State v. Nejad*, 286 Ga. 695, 700 (2) (690 SE2d 846) (2010) (firearm is deadly weapon as matter of law). The trial court denied Jordan's motion for a directed verdict on this count, and Jordan contends this was error. We review a denial of a motion for directed verdict under the same standard as that for determining the sufficiency of the evidence to support a conviction. *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 433 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

"A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon . . . ." OCGA § 16-5-21 (a) (2). "A person commits the

offense of simple assault when he or she either . . . (1) [a]ttempts to commit a violent injury to the person of another; or (2) [c]ommits an act which places another in reasonable apprehension of receiving a violent injury." OCGA § 16-5-20 (a).

No witness testified to seeing the shooter, but circumstantial evidence supported a finding that Jordan fired the shots. This included evidence that, shortly before the shooting, the bouncer had forcibly ejected Jordan from the club, that Jordan had told the bouncer he was going to his car and would be back, that the bouncer viewed Jordan's comments as threatening and thought he was going to get a gun, and that the subsequent shots were fired in the bouncer's direction. See *Giles v. State*, 211 Ga. App. 594, 595 (1) (440 SE2d 48) (1993) (finding sufficient circumstantial evidence that defendant shot victim's car to support criminal damage to property conviction; evidence included the facts that defendant had sent threatening notes to victim and that shooting occurred shortly after defendant left restaurant in vicinity of parked car). It was for the jury to determine whether the circumstantial evidence excluded every other reasonable hypothesis but that of Jordan's guilt. See *Mahan v. State*, 282 Ga. App. 201, 203 (1) (638 SE2d 366) (2006).

Although, as Jordan points out, the bouncer did not specifically identify what he was afraid would happen, the bouncer's testimony, viewed in the light most

3

favorable to the prosecution, authorized a finding that he was in reasonable apprehension of receiving a violent injury as shots were fired in his direction. The bouncer testified that he was afraid and "tr[ied] to get out of the way" when he heard the shots. He also testified that, as this occurred, others pushed him back into the club and onto the floor, and that afterward he saw bullet fragments inside the club and bullet holes inside and outside the club. See *Craft v. State*, 309 Ga. App. 698, 700-701 (2) (710 SE2d 891) (2011) (evidence that bullet came through apartment resident's window while she was sitting on the floor, that she remained "paranoid" and stayed on the floor for about ten minutes, and that she crawled to her telephone and the door to seek help, authorized finding of reasonable apprehension sufficient for aggravated assault conviction); *Maynor v. State*, 257 Ga. App. 151, 155 (570 SE2d 428) (2002) (evidence that victims heard gunshots outside their house, realized that shots had hit the house, and were afraid that the person might continue shooting at the house, was sufficient to show reasonable apprehension required for assault conviction).

Moreover, the evidence set forth above, viewed in the light most favorable to the prosecution, also depicted circumstances from which the jury could infer that Jordan intended to shoot the bouncer. A jury may infer criminal intent from the

4

circumstances, see *Campbell v. State*, 314 Ga. App. 299, 302 (724 SE2d 24) (2012), and there is a rebuttable presumption that "[a] person of sound mind and discretion . . . intend[s] the natural and probable consequences of his acts." OCGA § 16-2-5.

Because a rational trier of fact could have found that Jordan shot a gun in the bouncer's direction, attempting to commit a violent injury against him and placing him in reasonable apprehension of receiving a violent injury, the trial court did not err in denying Jackson's motion for directed verdict on the charge that he committed aggravated assault against the bouncer.

3. *Aggravated assault against the bystander.*

The indictment charged Jordan with aggravated assault against the bystander by shooting him with a gun, a deadly weapon. Unlike the bouncer, the bystander's testimony did not show that he was in reasonable apprehension of a violent injury at the time of the shooting, as required for an assault under OCGA § 16-5-20 (b) (2). Jordan argues that the evidence also was insufficient to show that he intended "to commit a violent injury to the person of another," as required for an assault under OCGA § 16-5-20 (b) (1). We disagree.

As explained above, the jury was authorized to infer from the evidence that Jordan intended to shoot the bouncer when he instead shot the nearby bystander.

5

"[W]hen an unintended victim is struck down as a result of an unlawful act actually directed against someone else, the law prevents the actor from taking advantage of his own wrong and transfers the original intent from the one against whom it was directed to the one who actually suffered from it." (Citation and punctuation omitted.) *Smith v. State*, 279 Ga. 423 (614 SE2d 65) (2005). Because a rational trier of fact could have found that Jordan shot at the bouncer intending to commit a violent injury against him and that the bullet struck the bystander instead, the evidence authorized Jordan's conviction for aggravated assault against the bystander. Id. at 423-424.

4. *Jury charge.*

Jordan argues that the trial court erred in charging the jury on aggravated assault. As explained below, his argument lacks merit, but we take this opportunity to clarify the appropriate standard of appellate review for such a claim of error.

(a) *Standard of review – usage.*

Appellate review of the jury charge is de novo. *Collier v. State*, 288 Ga. 756, 761 (1) (a) (707 SE2d 102) (2011) (Nahmias, J., concurring specially). The de novo standard is the only standard of review that accords the trial court no deference. See *Glover v. Ware,* 236 Ga. App. 40, 45 (3) (510 SE2d 895) (1999).

6

Both parties write that the standard of review is "plain legal error" – which is an expression this court has adopted as a synonym for "de novo." See id. But the state confuses the plain legal error standard with the plain error doctrine – which is something else entirely. The plain error doctrine authorizes consideration on the merits for a narrow category of issues that had been waived. See *Collier*, 288 Ga. at 762 (1) (b) (Nahmias, J., concurring specially). Until January 1, 2013 that doctrine applied only to alleged error in three circumstances not present in this case: "the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b) [when no objection was made at trial]." *Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012) (noting that "[t]he new Evidence Code will change this rule in cases tried after January 1, 2013, allowing a court to consider plain errors affecting substantial rights" more generally).

In light of the similarity of the two expressions, the state's confusion is understandable. And the expression "plain legal error" is confusing in another respect. It wrongly implies that, under the de novo standard, we would let stand a legal error that is not "plain."

7

Use of "plain legal error" as a synonym for "de novo" is apparently unique to this court. We coined the expression in *Leverett v. Jasper County Bd. of Tax Assessors*, 233 Ga. App. 470, 471 (1) (504 SE2d 559) (1998). It now appears in more than 200 of this court's opinions – and in one opinion of our Supreme Court, *Goddard v. City of Albany*, 285 Ga. 882, 883 (1) (684 SE2d 635) (2009), in which that court cited to one of our opinions. But we have found no cases from any other jurisdiction adopting that usage.

We conclude that the phrase "plain legal error" should not be used to designate the de novo standard of review. Instead, we recommend describing the standard of review applicable to questions of law as simply "de novo" – as in, "we review questions of law de novo."

(b) *The trial court properly charged the jury.*

Jordan argues that the trial court erroneously charged the jury that a defendant can commit the assault required for an aggravated assault by "intentionally committ[ing] an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury." He contends that this instruction was improper because "[t]he indictment specifically avers the attempted battery type aggravated assault" in the count alleging aggravated assault against the bouncer. But the indictment was not

8

so specific. It merely alleged that Jordan "unlawfully ma[de] an assault upon the [bouncer] with a gun, a deadly weapon, by shooting at him." This allegation could encompass either method of committing an assault – attempting to commit a violent injury to the person of another under OCGA § 16-5-20 (a) (1), or committing an act that places another in reasonable apprehension of receiving a violent injury under OCGA § 16-5-20 (a) (2). "The trial court did not charge a separate, unalleged method of committing aggravated assault, but simply defined both methods of committing simple assault, a lesser included offense." (Citation and punctuation omitted.) *Johnson v. State*, 281 Ga. 229, 230 (2) (637 SE2d 393) (2006). We find no error.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*

9