## A08A0112. LEGAN v. THE STATE.
### (656 SE2d 879)

BLACKBURN, Presiding Judge.

Following a jury trial, Patrick Legan was convicted on three counts of cruelty to children in the first degree.[1] He appeals his conviction and the denial of his motion for new trial, (i) challenging the sufficiency of the evidence and (ii) arguing that the trial court erred in admitting statements he made to law enforcement during a pre-polygraph examination interview. For the reasons set forth below, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict and [Legan] no longer enjoys a presumption of innocence." (Punctuation omitted.) *Berry v. State.*[2] In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia.*[3]

So viewed, the record shows that on February 12, 2001, Legan and Melody Ward (Legan's girlfriend) brought their five-month-old daughter, E. L., to the local hospital's emergency room based on their belief that the child had a broken leg. A doctor in the emergency room confirmed that E. L.'s right femur was broken and inquired as to how she was injured. Legan explained that he believed the injury occurred when, in trying to put E. L. into her swing, her leg became stuck and folded backward. Suspicious that this explanation did not explain the severity of the injury, the emergency room doctor consulted with an

---

[1] OCGA § 16-5-70 (b).

[2] *Berry v. State*, 274 Ga. App. 831 (1) (619 SE2d 339) (2005).

[3] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

orthopedic surgeon, as well as E. L.'s pediatrician, and a full skeletal survey of E. L. was ordered. The skeletal survey showed that, in addition to her current injury, E. L. had suffered multiple rib fractures, a fracture of her right ulna (near the elbow), a fracture of her right tibia (just above her ankle), and a fracture of her left femur. All of the injuries were in varying stages of healing and had occurred at different times within the last two months. The doctors all agreed that these injuries were not consistent with accidental trauma but were more than likely the result of child abuse. Consequently, the emergency room doctor notified the Department of Family and Children Services (DFCS) and the local sheriff's department.

Both Legan and Ward were interviewed by a DFCS caseworker and an investigator from the sheriff's department. Legan maintained that E. L.'s leg was accidentally broken when he attempted to place her into her swing. His only explanation for E. L.'s other injuries was his speculation that her ribs may have been fractured during a recent incident in which he administered CPR to her after she had stopped breathing due to choking on some string and that she could have been hurt when at times he unwittingly played too roughly with her. Legan was subsequently asked if he would submit to a polygraph examination, and he agreed. The following day, Legan voluntarily met with a Georgia Bureau of Investigation (GBI) polygraph examiner. However, prior to the examination, Legan told the examiner that E. L. broke her leg because he lost his temper with her and as a result intentionally used too much force in putting her into the swing. Based on this statement, the polygraph examination was suspended, and Legan was re-interviewed by the sheriff's investigator. During that interview, Legan again stated that E. L.'s leg was broken because, in a fit of frustration, he forcefully placed her into her swing despite her leg being stuck.

Legan was indicted on six counts of cruelty to children in the first degree. At his trial, the doctors who examined E. L. testified that her painful injuries were not consistent with accidental trauma but rather were indicative of child abuse. Two other doctors testified that E. L. had tested negative for any bone diseases that could have explained her injuries. In addition, the GBI polygraph examiner and the sheriff's investigator testified regarding the arguably incriminating statements that Legan had made to them. At the trial's conclusion, the jury found Legan guilty on the first three counts of the indictment, which charged him with fracturing E. L.'s right femur, left femur, and ribs, respectively, and not guilty on the final three counts. Legan filed a motion for new trial, which was amended and then denied by the trial court after a hearing. This appeal followed.

1. Legan challenges his convictions on the three counts of cruelty to children in the first degree, arguing that there was no evidence that he acted maliciously. We disagree.

Under OCGA § 16-5-70 (b), a "person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."

> For the purposes of this Code section, malice in the legal sense imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result.

(Punctuation omitted.) *Ferrell v. State.*[4] Additionally, whether a defendant intended his actions is a question of fact to be determined by the jury "upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." (Punctuation omitted.) *Kennedy v. State.*[5] "We will affirm the jury's finding of intent unless clearly erroneous." *Ferrell*, supra, 283 Ga. App. at 475 (2). See *Kennedy*, supra, 272 Ga. App. at 349-350.

In this matter, Legan argues that his statements to law enforcement were misinterpreted. He further argues that he reasonably explained some of E. L.'s injuries when he testified that he accidentally fell on her because his hip gave out while putting her in the swing and that her ribs may have been broken when he administered CPR to save her after a choking incident.[6] However, "the jury was not required to believe his characterization of [these] event[s]." *Johnson v. State.*[7] See *Miller v. State*[8] (jury not required to believe defendant's self-serving statement that she did not intend to harm child); *Kennedy*, supra, 272 Ga. App. at 350 (jury was authorized to believe defendant's earlier confession instead of his trial testimony). Rather, the jury was authorized to weigh these assertions against the other evidence, including the testimony of the doctors, who stated that E. L.'s

---

[4] *Ferrell v. State*, 283 Ga. App. 471, 474-475 (2) (641 SE2d 658) (2007).

[5] *Kennedy v. State*, 272 Ga. App. 347, 349 (612 SE2d 532) (2005).

[6] We note that two audiotaped interviews of Legan by the sheriff's investigator were not included in the record, which missing evidence would normally result in our inability to review any claims regarding insufficiency of the evidence. Nevertheless, because the substance of these interviews is found elsewhere in the testimony, we have chosen under these circumstances to exercise our discretion and to consider the insufficiency claim.

[7] *Johnson v. State*, 278 Ga. App. 66, 67-68 (1) (628 SE2d 183) (2006).

[8] *Miller v. State*, 277 Ga. 707, 709 (1) (593 SE2d 659) (2004).

multiple bone fractures were not the result of accidental trauma or CPR but were the result of child abuse. *Johnson*, supra, 278 Ga. App. at 68 (1). "Indeed, given the nature and extent of [E. L.'s] injuries, the jury was well within its authority to conclude that they were the result of . . . malicious act[s]." Id. See *Miller*, supra, 277 Ga. at 709 (1); *Kennedy*, supra, 272 Ga. App. at 350. Accordingly, the evidence was sufficient to support the jury's verdict of guilty as to the first three counts.

2. Legan also contends that the trial court erred in admitting the arguably incriminating statements that he used too much force in putting E. L. into her swing, which he made to the GBI polygraph examiner during the pre-polygraph examination interview. This contention is without merit.

When controlling facts are undisputed, our review of a motion to suppress is de novo. *Vansant v. State.*[9] Here, at the start of his trial, Legan moved to suppress his statements concerning how E. L. was injured, which he made to the GBI polygraph examiner during the pre-polygraph examination interview. The trial court therefore held a *Jackson-Denno*[10] hearing, in which the sheriff's investigator and the GBI polygraph examiner testified that Legan was not in custody when he made his statements. The examiner and the investigator further testified that prior to making any statements, Legan was read the *Miranda* warnings, had voluntarily signed a waiver of rights form, and had voluntarily signed a form stipulating that the results of the polygraph examination would be admissible evidence. In addition, both the waiver of rights form and the stipulation were produced for the trial court's review during the hearing and were introduced into evidence at trial.

Based on these undisputed facts, the trial court properly admitted Legan's statements. Indeed, as our Supreme Court has noted, "admissions which are otherwise competent and admissible are not to be excluded simply because the admissions were made after the taking of a lie detector test. The same rule applies to admissions made before commencement of the test." (Footnote omitted.) *Drane v. State.*[11] See *Williams v. State.*[12] Accordingly, the trial court did not err in admitting into evidence the pre-polygraph statements Legan made to the GBI polygraph examiner.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

---

[9] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[10] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[11] *Drane v. State*, 265 Ga. 255, 258-259 (5) (455 SE2d 27) (1995).

[12] *Williams v. State*, 144 Ga. App. 130, 135 (4) (240 SE2d 890) (1977).

DECIDED JANUARY 18, 2008.

*Jennifer E. Hildebrand,* for appellant.
*Herbert E. Franklin, Jr., District Attorney, Jana W. Allen, Assistant District Attorney,* for appellee.