## A06A2115. McCLAIN v. THE STATE.
(643 SE2d 273)

BERNES, Judge.

Following a jury trial, Calvin McClain appeals his conviction for aggravated battery on numerous grounds. We find no error and affirm.

Viewed in the light most favorable to upholding the jury's verdict, the evidence of record shows that on the evening of April 13, 2003, the victim called the police and asked that McClain be removed from his home. The victim, McClain, and Bernadette Bennett had been drinking heavily and McClain had become loud and unpleasant. An officer arrived and McClain complied with the officer's request that he leave the premises.

Irate that the victim had called the police, McClain returned to the victim's house approximately 20 minutes later. He slapped the victim several times and cut the victim's ear with a sharp object. The victim grabbed a baseball bat in an attempt to defend himself but fell, at which time McClain gained control of the bat and used it to repeatedly strike the victim. As the victim lay on the ground, McClain hit him with the bat approximately 15 times. McClain then warned the victim that he would kill the victim if he moved. Approximately ten minutes later, the victim moved and McClain again repeatedly struck him with the bat. It was not until the victim deliberately feigned his death by urinating and defecating on himself that McClain declared "he['s] dead," checked the victim's pulse, and kicked him one last time.

Believing that he had killed the victim, McClain told Bennett, who had witnessed the entire incident, that she could call the police. When the police arrived, the victim described the assault, identified McClain as the assailant, and gave his physical description. McClain later returned to the scene and was arrested.

The victim suffered multiple injuries as a result of the beating: swollen eyes, a severe complex laceration of the ear, an injury to his right upper body extremity, a fracture of the bone in his hand, a dislocation of the joint of his index finger, an injury to the thumb joint of his right hand, a fracture of his elbow, compound fractures of both bones of his forearm, a fracture of his left leg just below the knee, and a separate fracture of his left leg just above the ankle. He remained in the hospital for over one month.

1. Contrary to McClain's contention, the evidence above was sufficient to support his conviction for aggravated battery. "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body." OCGA § 16-5-24 (a). The indictment charged McClain with aggravated battery in that he "did maliciously cause

bodily harm to [the victim] by depriving him of a member of his body, his arms and legs, by striking him several times with a baseball bat."

The victim's doctor, an orthopedic surgeon, testified at trial that the victim would not regain full mobility of either his left arm or his right hand and that he would likely feel the effects of arthritis in his fingers, wrist, and upper extremity for the rest of his life. The bones in the victim's arm had been broken into several pieces and had actually penetrated his skin. The victim was immobilized by the application of a fixation device to his left arm, a cast to his leg, and a splint on his hand. The investigating officer who interviewed the victim during his month-long hospital stay testified that he observed the victim in a hospital bed with his extremities in various restrictive devices. The state sufficiently established that the victim had been "deprived" of the use of his extremities. See *Ganas v. State*, 245 Ga. App. 645, 647 (1) (b) (537 SE2d 758) (2000) (holding that the temporary loss of the use of a finger "deprives" the victim of that finger); *Terry v. State*, 188 Ga. App. 748 (2) (374 SE2d 235) (1988) (holding that a victim was deprived of his shoulder when it was seriously and probably permanently damaged).

2. In his second enumeration of error, McClain argues that the trial court erred when it declined to disqualify the public defender's office as co-counsel due to a conflict of interest. The record shows that McClain's counsel requested co-counsel for the defense and the trial court allowed an attorney from the public defender's office to serve. Prior to the commencement of the trial, McClain's counsel apparently requested that the court remove the selected co-counsel because the attorney had previously represented Bennett, a prosecution witness, in an unrelated matter, and the defense wanted to impeach Bennett using similar conduct. The record does not contain counsel's motion, and therefore the scope of the motion and whether the request related solely to the individual attorney or the entire public defender's office is unknown. Nonetheless, the trial court denied the motion for two reasons: (1) McClain wanted to use a prior conviction to impeach Bennett, which was a matter of public record; and (2) McClain's lead counsel stated that his questioning of the conduct would be limited in scope to the public record of the prior conviction.

During the trial, but prior to Bennett's testimony, McClain's counsel again addressed the court about the asserted conflict of interest. This time, co-counsel disclosed that she had actually represented Bennett during the period of time Bennett was questioned by the investigating officer in the case. The trial court allowed McClain's co-counsel to recuse herself from the case, and a different attorney from the public defender's office replaced her. McClain's counsel made no objection to the substitution.

On appeal, McClain argues that a conflict existed with respect to the entire public defender's office, not just his original co-counsel. He asserts that he was therefore denied effective assistance because his attorneys were precluded from using information to cross-examine Bennett that the public defender's office had obtained during its previous representation of the witness.

It is true that "included within the constitutional right to counsel is the right to representation that is free from conflicts of interest." (Citation and punctuation omitted.) *Porter v. State*, 278 Ga. 694, 697 (6) (606 SE2d 240) (2004). However, McClain's claim fails for two reasons.

First, nothing in the record indicates that McClain moved to remove the entire public defender's office on the basis of the alleged conflict. Indeed, McClain's counsel made no further objection after his co-counsel recused herself and was subsequently replaced. McClain's claim was therefore waived. See *Griggs v. State*, 262 Ga. 766, 769 (4) (b) (425 SE2d 644) (1993).

Second, "[t]o be successful in his appeal based on ineffective counsel due to a conflict of interest, [McClain] would have to show an actual conflict of interest that adversely affected his attorney's representation of him." (Citation omitted.) *Porter*, 278 Ga. at 697 (6). McClain has failed to meet his burden. There is nothing in the record to suggest that the replacement counsel possessed or withheld any information relevant to the impeachment of Bennett. Moreover, Bennett was actually cross-examined by McClain's lead counsel. Because McClain cannot show an actual conflict or prejudice, his claim lacks merit. See id.; *Turner v. State*, 273 Ga. 340, 342-343 (2) (541 SE2d 641) (2001); *Hill v. State*, 269 Ga. 23, 24-25 (2) (494 SE2d 661) (1998).

3. McClain next argues that the trial court erred in allowing the victim's doctor to relate what others had told him about the cause of the victim's injuries. During the trial, the orthopedic surgeon testified that he had been informed that the victim had been beaten with a baseball bat. The trial court admitted the challenged testimony over McClain's hearsay objection.

Irrespective of whether the testimony constituted impermissible hearsay, the error, to the extent one existed, was clearly harmless. Several other witnesses, including the victim and Bennett, testified that the victim's injuries had been inflicted by a baseball bat. "The fact that inadmissible evidence to which objection is interposed at trial is cumulative of other competent, admissible evidence is a factor to be considered on appellate review in determining whether the admission thereof is reversible error." (Citations, punctuation and emphasis omitted.) *Noles v. State*, 172 Ga. App. 228, 230 (5) (322 SE2d

910) (1984). The doctor's testimony as to the baseball bat was cumulative and therefore any error as to its admission was harmless.

4. During Bennett's direct examination, she testified that, once McClain was convinced that the victim was dead, he told her that she could call the police. She was then asked if he said anything else to her that night. Bennett responded, "Yeah, he say he already killed five —," at which time the prosecutor immediately interrupted her and requested a bench conference. The prosecutor explained to the judge that he believed that the victim may have been preparing to testify about the fact that McClain had been previously tried for murder in an unrelated case. The parties agreed that the prosecutor would have a private conference with Bennett to ensure that she make no further comments about the prior crime.

(a) In his fourth enumeration of error, McClain argues that the trial court erred when it failed to declare a mistrial or issue curative instructions, sua sponte, after Bennett's statement, which he asserts amounted to improper character evidence.

It is not possible to discern from the record exactly what Bennett intended to say had she not been interrupted by the prosecutor. Nonetheless, her testimony would have been admissible to the extent that she attempted to relay statements made by McClain during the commission of the battery, even if the statements related to previous crimes. See *Durham v. State*, 243 Ga. 408, 410 (7) (254 SE2d 359) (1979); *Belcher v. State*, 201 Ga. App. 139, 140-141 (2) (410 SE2d 344) (1991); *Morgan v. State*, 161 Ga. App. 67 (2) (288 SE2d 836) (1982). "[A]cts and circumstances forming a part or continuation of the main transaction are admissible as res gestae and it does not matter that the act is another criminal offense." (Citations and punctuation omitted.) *Belcher*, 201 Ga. App. at 140 (2). See also *Allen v. State*, 263 Ga. 60, 61 (3) (428 SE2d 73) (1993). This is true irrespective of whether it incidentally places the defendant's character in issue. *Belcher*, 201 Ga. App. at 140 (2). Accordingly, there was no error in the trial court's failure to declare a mistrial or issue a curative instruction.

(b) McClain also argues that his trial counsel was ineffective for failing to object to Bennett's testimony quoted above. As illustrated in subsection (a), the testimony would have been admissible and therefore any objection would have been futile and cannot serve as a basis for ineffective assistance of counsel. See *Mahan v. State*, 282 Ga. App. 201, 206 (2) (c) (638 SE2d 366) (2006).

5. McClain asserts in his final enumeration that his trial counsel was ineffective for failing to object to certain testimony from a state witness. During its case-in-chief, the state elicited the following improper testimony from the arresting officer related to McClain's right to remain silent:

A: After I read [the *Miranda* warning], I stated to Mr. McClain, do you understand each of these rights I explained to you? And he said yes.

Q: Okay.

A: And having these rights in mind, I asked him would he answer any questions, and he said he didn't want to make any statements.

Q: And he didn't make any statements to you?

A: No, sir.

. . .

Q: How did the Defendant act? What was his behavior from the first time that you saw him until you placed him in the car and after you read him his rights?

A: He didn't want to talk. He didn't want to say nothing. He kept — he looked at Mr. Simmons.

. . .

Q: Okay. Did he make any comments to you after you read him his rights and after he said that he — that he didn't want to give any statements —

[Defense Counsel]: Your Honor, asked and answered. He asked him if he spoke after he made a statement.

[Prosecutor]: I'm just asking, Your Honor, if he made any other comments.

The Court: I'll allow the question.

The fact that a defendant invokes the right to remain silent cannot be used against him at trial. *Bruce v. State*, 268 Ga. App. 677, 683 (2) (603 SE2d 33) (2004). However, "not every comment directed toward a defendant's silence will result in an automatic reversal." (Citation and punctuation omitted.) *Newton v. State*, 226 Ga. App. 501, 502 (1) (486 SE2d 715) (1997). Here, the record reflects that trial counsel made a strategic decision not to object on this ground because he "did not wish to give any more weight to that line of questioning." Trial counsel's strategic decision does not amount to ineffective assistance of counsel. See, e.g., *Moss v. State*, 278 Ga. App. 362, 365 (2) (b) (629 SE2d 5) (2006). Moreover, in view of the overwhelming evidence of McClain's guilt, he cannot demonstrate that "there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." (Punctuation and footnote omitted.) *Bruce*, 268 Ga. App. at 683 (2). See also *Cloud v. State*, 235 Ga. App. 721, 723-724 (6) (510 SE2d 370) (1998). Accordingly, no reversible error has been shown.

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED FEBRUARY 28, 2007 —
RECONSIDERATION DENIED MARCH 14, 2007 — 

*Randall M. Clark*, for appellant.
*Stephen D. Kelley*, District Attorney, *Jonathan R. Miller III*, Assistant District Attorney, for appellee.