## A08A2314. SMALLWOOD v. THE STATE.

(673 SE2d 537)

MIKELL, Judge.

Following a jury trial, David Harold Smallwood was convicted of burglary and possession of a firearm by a convicted felon. The trial court sentenced Smallwood to 15 years, with 12 to be served in confinement. On appeal from the denial of his motion for a new trial, Smallwood contends (1) that the evidence was insufficient to support his convictions; (2) that the trial court incorrectly charged the jury on impeachment and prior consistent statements; and (3) that he received ineffective assistance of counsel. We affirm.

Viewed in the light most favorable to the jury's verdict, the evidence shows that on January 26, 2005, Billy Sharpton, a Lawrenceville police officer, discovered that a home he owns with his brother on Chandler Road in Gwinnett County had been burglarized and some guns had been taken. On January 30, Sharpton returned to check on the home. Before leaving, he closed all the interior doors and cabinets and locked all the exterior windows and doors. When Sharpton returned to the home the next morning, he noticed a black Chevrolet pickup truck sitting along the edge of the yard, and observed two men, later identified as Smallwood and his brother, Timmy, coming out of the house. Sharpton ordered the men to the ground and called Lawrenceville police on his cell phone.[1] Officers from the City of Lawrenceville and Gwinnett County arrived on the scene and arrested the two men. Officers recovered two bags of hypodermic needles from David Smallwood's pocket. Sharpton testified that his brother used hypodermic needles for his diabetes medication; that he kept some needles in the refrigerator of the home; that the needles were missing; and that the ones recovered from David's pocket matched those that had been in the refrigerator. Sharpton also identified several items found in the truck that had been taken from the home, including a toolbox and a revolver. When he entered the home, Sharpton observed that the kitchen cabinets were open; that some pocket knives and a gun were lying on the kitchen table; that a duffle bag in the garage had been cut open with a knife and a gun removed; that two exterior doors were open; and that a window was unlocked and the screen was loose. Sharpton testified that the home had been broken into several times; that it was not — and had never been — a rental; and that he did not have a "for rent" sign in the yard.

---

[1] At trial, Sharpton explained that the house is in Gwinnett County, but he called Lawrenceville police because the telephone number is programmed into his cell phone.

Gwinnett County police officer Jonathan Golliher testified that he responded to the scene and observed a black Chevrolet Silverado pickup truck. He recovered a pistol from the cab of the truck and then went inside the house to investigate. Once inside, Golliher observed open drawers and cabinets throughout the home and several knives, a gun, and a box of ammunition lying on a chair near the back door. Golliher testified that he was aware the home had been broken into previously and that he had been told to check on the property. He explained that after Timmy and David were arrested and placed in a City of Lawrenceville patrol car, their conversation was recorded on the car's video equipment. A police officer with the City of Lawrenceville gave Golliher the videotape and he transported it to Gwinnett County police headquarters, where he turned it over to Detective Gary Miles.

Detective Miles testified that he executed a search warrant at David Smallwood's residence — also his mother's apartment — and recovered several items from the mother's bedroom, including four guns, a radio, and a Polaroid camera, all belonging to Sharpton. Smallwood's mother, Linda Smallwood, told Miles she had no idea the items were in her room. Miles also investigated a reported burglary where the victim, Kelly Joe Lunsford, identified Timmy's truck as the one he had observed leaving his property. When Miles executed a search warrant at Timmy Smallwood's residence, he recovered a stolen motorcycle and several items taken from Lunsford. Miles acknowledged receiving the videotape from Golliher. After the mostly inaudible tape was played for the jury, Miles confirmed that it was in the same condition as he received it from Golliher.

At trial, Timmy Smallwood testified on behalf of the state. He denied entering Sharpton's house and testified that David had suggested they look at the house to see if it was for rent since Linda Smallwood needed a new place to live. He testified that the truck and toolbox were both his but that the four guns recovered from his mother's bedroom were not. Timmy also testified that he found the guns in his mother's carport; that he carried them to her bedroom; and that David saw the guns before he took them upstairs. Timmy acknowledged lying to police that a green truck "with some Mexicans" had just left Sharpton's property when he and David arrived to inquire about renting it and stated that he did not carry syringes in his truck for his mother's medication.

Linda Smallwood testified that David had been living with her for two months at the time of the burglary. She testified that when she went into the kitchen the morning of January 31, she saw Timmy carrying a basket of guns, but she did not realize that Timmy had put the basket in her closet. She also testified that she has

diabetes; that she uses syringes; that she left some syringes in Timmy's truck; and that the syringes found in David's pocket belonged to her.

At trial, David Smallwood denied committing the burglary and testified that he had no knowledge of the guns found in his mother's bedroom. He testified that it was Timmy's idea to look at the house for their mother to rent and that they had just climbed the steps of the back porch to see if the owner was home when Sharpton appeared in the driveway.

1. Smallwood claims there was insufficient evidence to support his convictions. We disagree.

(a) "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."[2] Smallwood contends that the evidence was insufficient to support his burglary conviction because Sharpton's testimony at trial that he saw Smallwood exit his house was inconsistent with his statement at the scene and conflicted with Smallwood's testimony that he never entered the house. At the scene, Sharpton prepared a written statement, which read as follows: "When I drove up I saw a black Chevy pickup in the yard. I cut my car engine off and got out to approach the house. Two white males came from the rear of the house. I ordered them on the ground. They insisted on arguing with me, but finally did cooperate." When questioned at trial about his statement, Sharpton emphasized that he saw David and Timmy come out the back door, but that he waited for them to come around the rear of the house before he ordered them to get down. He testified that he told several officers that the men came out of the back of the house and that he wrote down a brief description of what happened, which "may or may not have [had] all the minute details." Detective Miles testified that Sharpton told him that he observed David and Timmy exit the back of the house.

> Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.[3]

---

[2] OCGA § 16-7-1 (a).

[3] (Citation and footnote omitted.) *Spradlin v. State*, 279 Ga. App. 638, 639-640 (1) (631 SE2d 828) (2006).

Pretermitting whether Sharpton's written statement contradicted his trial testimony, the jury was authorized to believe Sharpton and Detective Miles and reject Smallwood's account.

(b) OCGA § 16-11-131 (b) provides that "[a]ny person . . . who has been convicted of a felony . . . and who . . . possesses . . . any firearm commits a felony." Constructive possession is sufficient to show violation of the statute, and it may be proved by circumstantial evidence.[4] Smallwood claims there was no direct evidence linking him to the basket of guns found in his mother's bedroom, and points out that he was not present when the guns were discovered.

> Because the evidence viewed in the light most favorable to the verdict shows [Smallwood] committed the burglary in which the guns were stolen, it follows that [he] took possession of the guns during the burglary. . . . Just as the circumstantial evidence in this case was sufficient to support the verdict of guilty as to the charge of burglary, it is also sufficient to support the verdict of guilty on those charges of possession of a firearm by a convicted felon in which no direct evidence of possession was presented.[5]

It is immaterial that the guns were found in Linda's bedroom and that Smallwood was not present when the guns were found. The guns were found in Smallwood's residence and Timmy testified that Smallwood knew the guns were in the residence. Timmy also testified that he did not put the basket in the carport and that the guns did not belong to him or his mother.

2. Smallwood contends that the trial court incorrectly charged the jury on impeachment. We disagree.

The trial court charged the jury as follows: "To impeach a witness is to prove that a witness is unworthy of belief. A witness may be impeached . . . [b]y proof that the witness has been convicted of a crime of moral turpitude. A crime of moral turpitude is defined as a felony." Smallwood does not challenge the admission of his prior convictions for purposes of impeachment, but claims that the trial court's charge was erroneous because the phrase "moral turpitude" was replaced in the statute by "dishonesty or making a false statement."[6] Smallwood contends that the trial court should have charged that "[a] witness may be impeached by . . . proof that the witness has been convicted of a felony, that is, a crime punishable by

---

[4] See *Moses v. State*, 265 Ga. App. 203, 213 (6) (c) (593 SE2d 372) (2004); *Slater v. State*, 209 Ga. App. 723, 724 (1) (434 SE2d 547) (1993).

[5] (Citation omitted.) *Slater*, supra.

[6] OCGA § 24-9-84.1 (a) (3).

20

imprisonment of one year or more."

> [W]here [a] charge . . . as a whole substantially presents
> issues in such a way as is not likely to confuse the jury even
> though a portion of the charge may not be as clear and
> precise as could be desired, a reviewing court will not
> disturb a verdict amply authorized by the evidence. There is
> no error where it is unlikely that the instructions consid-
> ered as a whole would mislead a jury of ordinary intelli-
> gence.[7]

In this case, the court made clear that a felony conviction can be
offered to impeach a witness.[8] There was no error in the court's
charge on impeachment.

3. In his next enumerated error, Smallwood argues that the
court erred in charging the jury on prior consistent statements. The
trial court charged the jury as follows:

> Should you find that any witness has made a statement
> prior to the trial of this case that is consistent with that
> witness's testimony from the witness stand, and such prior
> *inconsistent* statement is material to the case and the
> witness's testimony, then you are authorized to consider the
> other statement as substantive evidence.

Contrary to Smallwood's contention, the trial court's use of *incon-
sistent* instead of *consistent* was a misstatement, or palpable "slips of
the tongue."[9] Moreover, as the state points out, the written charges,
which were taken to the jury room, did not include the erroneous
language.

In any event, as we noted in *Boyt v. State*,[10] such an instruction
on prior consistent statements is a truism.[11] Unless otherwise
instructed, "[a] jury may consider *all* the words it hears as substan-

---

[7] (Footnote omitted.) *Smith v. State*, 291 Ga. App. 389, 391 (2) (662 SE2d 201) (2008).

[8] See *Wooten v. State*, 240 Ga. App. 725, 727-728 (3) (b) (524 SE2d 776) (1999) (failure to charge the jury that a means of impeachment is to show that the witness has been convicted of a felony was not erroneous where trial court charged the jury that "a witness may be impeached by . . . proof that the witness has been convicted of a crime of moral turpitude").

[9] (Footnote omitted.) *Watkins v. State*, 290 Ga. App. 41, 42 (1) (658 SE2d 812) (2008). See also *Lands v. State*, 189 Ga. App. 577, 578 (3) (376 SE2d 701) (1988) (no possibility of confusion where trial court inadvertently said "consistent" rather than "inconsistent" while instructing the jury on prior inconsistent statements).

[10] 286 Ga. App. 460 (649 SE2d 589) (2007).

[11] Id. at 466 (3).

tive evidence."[12] Thus, the challenged instruction could not have had any effect on the proceedings, even if, as noted in *Boyt*, "[t]he better practice would be to give no charge at all on prior consistent statements and leave that matter to the arguments of counsel."[13] Here the court's instructions, taken as a whole, would not mislead a jury of average intelligence.

Finally, we reject Smallwood's contention that the evidence did not support such a charge. During cross-examination, defense counsel specifically questioned Sharpton and Timmy Smallwood about consistencies and inconsistencies between their prior statements and their trial testimony. Smallwood's enumerated error is meritless.

4. In his remaining enumerations of error, Smallwood contends that his trial counsel rendered ineffective assistance.

> In order to prove his claim of ineffective assistance of counsel, [Smallwood] must establish both prongs of the test set out in *Strickland v. Washington*:[14] (1) that his trial counsel's performance was deficient and (2) that counsel's inadequate performance so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. Failure to satisfy either prong of this two-part test is fatal to an ineffective assistance claim.[15]

"[A] trial court's finding that a defendant has been afforded effective assistance of counsel will be affirmed on appeal unless clearly erroneous."[16] "[T]he lower court's legal conclusions are reviewed de novo."[17]

(a) Smallwood contends that his trial counsel performed deficiently by failing to object to the admission of the videotape or move for its suppression because the state failed to meet certain foundation requirements announced in *Steve M. Solomon, Jr., Inc. v. Edgar*.[18] He bases his argument on evidence that Golliher received the tape from an unnamed and unknown City of Lawrenceville police officer. We disagree.

---

[12] (Emphasis in original.) Id. at 466-467 (3).
[13] Id. at 468 (3).
[14] 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984).
[15] (Footnote omitted.) *Thomas v. State*, 291 Ga. App. 795, 804 (6) (662 SE2d 849) (2008).
[16] (Footnote omitted.) *White v. State*, 293 Ga. App. 241 (1) (666 SE2d 618) (2008).
[17] (Footnote omitted.) *Robbins v. State*, 290 Ga. App. 323, 329 (4) (659 SE2d 628) (2008).
[18] 92 Ga. App. 207, 211-212 (3) (88 SE2d 167) (1955).

> [W]hen an appropriate witness under OCGA § 24-4-8 is unavailable to authenticate such evidence, a videotape is admissible where the operator of the machine which produced it, or one who personally witnessed the events recorded testifies that the videotape accurately portrayed what the witness saw take place at the time the events occurred.[19]

Here, David and Timmy Smallwood authenticated the tape when they identified their own and each others' voices and admitted that the tape accurately reflected the conversation they had in the back of the patrol car at the time of their arrest. Since the tape was admissible, trial counsel was not ineffective for failing to move for its suppression or otherwise object to its admission at trial.[20]

(b) Relying on *Old Chief v. United States*,[21] *Ross v. State*,[22] and *Starling v. State*,[23] Smallwood next contends that trial counsel performed deficiently in waiving a bifurcated trial, in failing to stipulate to Smallwood's felon status, in questioning him about his criminal history, in failing to object to the similar transaction evidence, and in failing to obtain a limiting instruction.

At trial, the state introduced without objection a certified copy of a prior conviction for burglary, which supported the charge of convicted felon in possession of a firearm. That exhibit also referenced Smallwood's prior convictions for a second count of burglary, obstructing an officer, and giving a false name. During Smallwood's testimony, defense counsel asked the trial court to admit into evidence certified copies of additional prior convictions, including forgery, theft by taking and possession of cocaine, and then questioned Smallwood about them. Smallwood acknowledged the convictions and testified that he pled guilty to all of them. He also explained that he was on parole at the time of the offenses; that he wore an ankle monitor; and that he spoke to his parole officer on the

---

[19] (Punctuation omitted.) *Wallace v. State*, 267 Ga. App. 801, 803-804 (1) (600 SE2d 808) (2004) (audiotape admissible where one who personally witnessed the events recorded testifies that the audiotape accurately portrayed what the witness saw take place at the time the events occurred), citing *Phagan v. State*, 268 Ga. 272, 281 (5) (486 SE2d 876) (1997). See also *Brown v. State*, 274 Ga. App. 302, 304 (2) (617 SE2d 227) (2005) (audiotape can be authenticated by testimony of one who was party to the events recorded).

[20] See *McClain v. State*, 284 Ga. App. 187, 190 (4) (b) (643 SE2d 273) (2007) (where testimony would have been admissible, any objection would have been futile and cannot serve as a basis for a claim of ineffective assistance of counsel). See also *Winfrey v. State*, 286 Ga. App. 718, 724 (6) (a) (650 SE2d 262) (2007) ("A trial attorney's failure to make a meritless or futile motion does not provide a basis for finding that the defendant received ineffective assistance of counsel") (citation and punctuation omitted).

[21] 519 U. S. 172 (117 SC 644, 136 LE2d 574) (1997).

[22] 279 Ga. 365 (614 SE2d 31) (2005).

[23] 285 Ga. App. 474 (646 SE2d 695) (2007).

morning of the incident.

"[A]s a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. A reviewing court evaluates trial counsel's performance from counsel's perspective at the time of trial."[24] While trial counsel seemed somewhat confused about OCGA § 24-9-84.1 and the rules governing admission of prior convictions, trial counsel's strategy throughout the trial was to show that Smallwood took responsibility for his past actions; that he never entered Sharpton's residence on January 31; and that Timmy, who was in sole possession of the stolen items, must have committed the burglary at another time. As trial counsel argued during his closing statement:

> [David] is not responsible for his brother's actions. . . . [David] has made some mistakes in the past and he has nobody to blame but himself. But one thing you're going to notice when you look at these sentences over here, is they're certified sentences of crime[s] that have been committed by my client. . . . But, you'll also notice that they're not as a result of a trial by a jury or a trial by a judge; they are pleas of guilty voluntarily entered into by [David] because he said he did it, I got caught, I acknowledge my guilt, and I'll take my lumps. But that's not the case here, because we're not guilty of these offenses. And he just simply refuses to plead guilty to something he didn't do.

> Trial tactics, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel to have been ineffective so as to overturn a conviction. They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.[25]

Trial counsel's decision to acknowledge Smallwood's criminal history for the purpose of showing that he would have pled guilty if he had committed the instant burglary was not patently unreasonable.[26]

---

[24] (Citation, punctuation and footnote omitted.) *Sillah v. State*, 291 Ga. App. 848, 852 (3) (663 SE2d 274) (2008).

[25] (Citations and punctuation omitted.) *Brantley v. State*, 271 Ga. App. 733, 737 (1) (611 SE2d 71) (2005).

[26] *Mallon v. State*, 266 Ga. App. 394, 396 (2) (597 SE2d 497) (2004) (trial counsel's decision to admit defendant's guilt as to two charges in order to minimize state's case was reasonable trial strategy); *Crawford v. State*, 252 Ga. App. 722, 725 (3) (556 SE2d 888) (2001) (trial counsel's decision to introduce defendant's prior convictions during defendant's direct examination was reasonable where counsel testified that his strategy was to establish that

Requesting a bifurcated trial and/or a limiting instruction would have undermined this strategy.[27] It follows that trial counsel was not ineffective on this ground.

(c) Smallwood contends that trial counsel was deficient in failing to request a jury instruction on the lesser included offense of criminal trespass. Smallwood's defense at trial was that he went over to Sharpton's house to inquire about whether the house was for rent. "[T]o request a charge on criminal trespass would have been inconsistent with this theory. This was a reasonable strategy on trial counsel's part and no error has been demonstrated."[28]

(d) Smallwood contends that trial counsel was deficient in failing to request redaction of the certified copies of his prior convictions.

(i) State's Exhibit 41 reflects that Smallwood had been indicted and charged with burglary but that he pled guilty to theft by taking, as a lesser included offense. Smallwood claims that trial counsel should have asked that the burglary charge on the indictment be redacted because it showed that Smallwood was initially charged with the same charge he was facing in the instant case.

Pretermitting whether trial counsel was deficient, Smallwood has failed to establish prejudice.[29] First, as discussed in Division 4 (b), supra, trial counsel's decision to acknowledge Smallwood's prior convictions was reasonable trial strategy. Second, even without this redaction, the jury was aware that Smallwood previously had pled guilty to a charge of burglary. In addition, the indictment was not prejudicial, since it showed that the initial charge was reduced.[30] Smallwood has failed to show that there is a reasonable probability that the result of the proceeding would have been different, but for counsel's failure to request redaction.

(ii) Smallwood also argues that trial counsel should have requested redaction of the charge for obstructing an officer. In light of our ruling in Division 4 (b), supra, that counsel's decision to acknowledge David's criminal past was strategic, counsel was not deficient in failing to request redaction of the obstruction charge.

---

defendant willingly admitted his past mistakes and did not try to conceal his past from the jury).

[27] See *Jones v. State*, 280 Ga. 205, 207 (2) (b) (625 SE2d 1) (2005) ("[t]he decision of criminal defense counsel not to request limiting instructions is presumed to be strategic") (citation omitted).

[28] (Citation omitted.) *Rudnitskas v. State*, 291 Ga. App. 685, 689 (3) (d) (662 SE2d 729) (2008) (trial counsel did not err in failing to request charge on lesser included offense of criminal trespass where strategy of case was that defendant was on another's property for a lawful purpose).

[29] See *Daniel v. State*, 292 Ga. App. 560, 564 (4) (a) (665 SE2d 696) (2008).

[30] See *Jones*, supra at 208 (2) (b) (failure to request redaction of indictment which state used to prove defendant's prior conviction for armed robbery was not prejudicial since indictment showed that the initial charges were either reduced or dead docketed).

(e) Smallwood contends his trial counsel was ineffective in failing to request the pattern jury charge on knowledge.[31] Smallwood maintains that counsel's failure affected the outcome of the trial because during deliberations, the jury sent in a note which read as follows: "Concerning Count 5 on possession, what delegates what is exactly possession? Is possession simply having a firearm in the house? Is it possessing the gun at the time of arrest? Whether or not there is knowledge of the firearm at the time of the arrest or warrant?" In response, the trial court instructed the jury on actual and constructive possession.

Smallwood's contention is controlled adversely to him by *Copeland v. State*.[32] As in *Copeland*, here the trial court thoroughly instructed the jury on the presumption of innocence, the burden of proof, reasonable doubt, actual and constructive possession, and intent as an essential element of every crime. The court charged that a defendant is not presumed to have acted with criminal intent; that intent could be shown in certain, specified ways; and that mere suspicion, association or presence is not sufficient to authorize a conviction. Given that the trial court's jury instructions covered substantially the same principles as a charge on knowledge, we do not find counsel ineffective for not requesting the charge. As for the fact that trial counsel agreed with appellate counsel during the motion for new trial hearing that he should have asked for a charge on knowledge, we reiterate that this Court does not evaluate effectiveness of trial counsel by hindsight or by what present counsel would have done.[33]

(f) Smallwood's contention that trial counsel was ineffective in requesting a jury instruction on impeachment is controlled adversely to him by *Miller v. State*.[34] The trial court did not err in denying

---

[31] The pattern charge on knowledge is as follows:

Knowledge on the part of the defendant that the crime of _____ was being committed and that the defendant knowingly and intentionally participated in or helped in the commission of such crime must be proved by the State beyond a reasonable doubt. If you find from the evidence in this case that the defendant had no knowledge that a crime was being committed or that the defendant did not knowingly and intentionally commit, participate, or help in the commission of (and was not a conspirator in) the alleged offense, then it would be your duty to acquit the defendant. On the other hand, should you find beyond a reasonable doubt that the defendant had knowledge that the crime of _____ was being committed and that the defendant knowingly and intentionally participated or helped in the commission of it, then you would be authorized to convict the defendant.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.43.10 (2007).

[32] 263 Ga. App. 776, 780 (2) (589 SE2d 319) (2003).

[33] See *Daly v. State*, 285 Ga. App. 808, 813 (4) (e) (648 SE2d 90) (2007); *Moss v. State*, 278 Ga. App. 362, 364 (2) (629 SE2d 5) (2006).

[34] 281 Ga. App. 354, 355 (1) (636 SE2d 60) (2006).

Smallwood's motion for new trial on the basis of ineffective assistance of counsel.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 11, 2009

*Glynn R. Stepp, Alan Mullinax,* for appellant.

*Daniel J. Porter, District Attorney, Jimmie E. Baggett, Jr., Assistant District Attorney,* for appellee.